**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRESIDIO, INC. and PRESIDIO NETWORKED SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>DRIVEN ACQUISITION, INC. d/b/a DRIVEN TECHNOLOGIES, DRIVEN TECHNOLOGIES, LLC, DANIEL BELLO, SANFORD BROWN, and ANDREW CHRIS,<br><br>Defendants. | Case No. 23-cv-6235<br><br><br>__COMPLAINT__<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Presidio, Inc. and Presidio Networked Solutions LLC ("PNS," and together with Presidio, Inc., "Plaintiffs" or "Presidio"), by their attorneys Sheppard, Mullin, Richter & Hampton LLP, for their Complaint, allege against Defendants Driven Acquisition, Inc. d/b/a Driven Technologies ("Driven Acquisition"), Driven Technologies, LLC ("Driven Technologies," and together with Driven Acquisition, "Driven"), Daniel Bello ("Bello"), Sanford Brown ("Brown"), and Andrew Chris ("Chris," and together with Driven, Bello, and Brown, "Defendants"), as follows:

**NATURE OF THE ACTION**

1.      This is a case about three former Presidio employees who are using Presidio's trade secrets and confidential information and violating their contractual or other legal obligations to Presidio (or both) as new employees of Driven, a direct Presidio competitor.

2.      Presidio's investigation, including forensic analysis, has confirmed that, in the weeks prior to their departure from Presidio, Bello, Chris, and Brown misappropriated Presidio's trade secrets, which are intended for use in interstate commerce, for Driven's benefit. These acts

included emailing Presidio proprietary information to personal email addresses; tampering with Presidio-issued laptops so that Presidio now cannot access them (and identify further evidence of misconduct); and wholesale deletion of files from Presidio's computer systems. Driven is not only aware of this misconduct but is taking actions to encourage Bello, Chris, and Brown.

3.    In addition, two of the Defendants—Bello and Chris—entered into employment agreements with Presidio's predecessor (which agreements were assigned to Presidio by operation of law) under which they agreed that, while employed by Presidio and for one year thereafter, they would not solicit or do any work with Presidio's customers or prospective customers on behalf of a competing venture. Bello and Chris also agreed that they would not solicit or induce any of Presidio's customers or partners (such as vendors) to divert their business from Presidio to a competitor.

4.    Presidio has uncovered evidence indicating that Bello and Chris are soliciting and plan to solicit Presidio customers and partner/suppliers on behalf of Driven, and are attempting to divert business relationships with Presidio's customers and partners from Presidio to Driven. Upon information and belief, Driven has been aware of these contractual obligations, but nonetheless is encouraging the misappropriation of Presidio's trade secrets for Driven's benefit.

## PARTIES

5.    Plaintiff Presidio, Inc. is a Delaware corporation, with its principal place of business located in New York, New York.

6.    Plaintiff Presidio Networked Solutions LLC (previously defined as "PNS") is a Florida limited liability company and an indirectly wholly owned subsidiary of Presidio, Inc. PNS' principal place of business is located in New York, New York.

7.      Upon information and belief, Defendant Driven Acquisition, Inc. d/b/a Driven Technologies (previously defined as "Driven Acquisition") is a Delaware corporation, with its principal place of business located in New York, New York.

8.      Upon information and belief, Defendant Driven Technologies, LLC (previously defined as "Driven Technologies") is a Florida limited liability company, with its principal place of business located in New York, New York.

9.      Upon information and belief, Defendant Daniel Bello is an individual domiciled within the State of New York.

10.     Upon information and belief, Defendant Sanford Brown is an individual domiciled within the State of New Jersey.

11.     Upon information and belief, Defendant Andrew Chris is an individual domiciled within the State of New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331, the Defend Trade Secrets Act (18 U.S.C. § 1836), and 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendants Driven Acquisition and Driven Technologies because they are headquartered within this District.

14.     This Court has personal jurisdiction over Defendants Bello and Chris because, upon information and belief, they are domiciled within the State of New York and regularly conduct business within this District.

15.     This Court has personal jurisdiction over Defendant Brown because he regularly conducts business within the State of New York, including this District, and has sufficient minimum contacts with the State of New York related to the conduct at issue.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, Driven Acquisition and Driven Technologies are residents of this District.

17.     Venue is also proper in this District, and this Court has personal jurisdiction over Bello and Chris, because, pursuant to Section 11 of Bello's and Chris' Agreements (as defined below), each of Bello and Chris agreed that "[a]ny claims or legal actions by one party against the other arising out of this Agreement shall be commenced and maintained in any New York state or federal court and I hereby submit to the jurisdiction and venue of any such court."

## FACTS

### A. Presidio's Business

18.     Presidio provides professional and managed services and products for advanced IT solutions, including design implementation and services for data storage, information security, cyber security, and cloud computing capabilities.  The industry is highly competitive, and its players, including Presidio, rely upon specialized knowledge regarding customers, markets, inventions, engineering, design, and other business information in order to effectively compete. Pricing, cost, and margin information is especially important in light of the competitive nature of the business.

19.     Presidio requires its employees (including Defendants Bello, Brown, and Chris) at all times relevant herein to review and acknowledge the provisions and obligations set forth in its Employee Handbook & Code of Conduct (the "Employee Handbook"), including, but not limited to, the obligations set forth within the Presidio Confidentiality Policy.

20.     The Confidentiality Policy states that "[Presidio] Confidential Information is broadly defined and includes all non-public information that has or could have commercial value of other utility in the business in which Presidio or its Clients are engaged or in which they contemplate engaging."  The Confidentiality Policy also provides that this "Confidential

Information must not be used or disclosed to anyone outside Presidio, either directly or indirectly" and employees "must return all writings and other tangible things that are in [their] possession, custody or control, including copies, immediately upon your separation from employment."

21.     In addition, all Presidio employees (including Bello, Brown, and Chris) are required to acknowledge and abide by the Employee Handbook's instructions and restrictions regarding Presidio's intellectual property:

> As an employee, the things you create for the Company belong to the Company. This "work product" includes inventions, discoveries, ideas, improvements, software programs, artwork and works of authorship. This work product is the Company's property (it does not belong to individuals) if it is created or developed, in whole or in part, on company time, as part of your duties or through the use of company resources or information. Partners must promptly disclose to us, in writing, any such work product and cooperate with our efforts to obtain protection for us. To ensure that we receive the benefit of work done by outside consultants, it is essential that an appropriate agreement or release be in place before any work begins.

22.     Presidio also takes steps to safeguard its trade secrets and confidential, proprietary information from unauthorized access or use. In particular, Presidio maintains its confidential information in encrypted, password-protected electronic repositories not accessible to non-Presidio employees. This ensures Presidio's proprietary information stored on the company's computer system cannot be accessed by unauthorized users. All Presidio employees are issued identity badges and password-protected laptops that are password-protected. Presidio IT networks are also VPN password-protected, and Presidio instructs its employees to utilize password-protected zipping and file-sharing software. Further, Presidio IT conducts a monthly audit to ensure these security measures are in place. Presidio also stamps documents "Confidential and Proprietary" to alert its employees of the confidential nature of the document

they are accessing or working on and that dissemination of such documents outside Presidio is prohibited.

23.      Presidio also maintains the Cloud Acceptable Use Policy, which governs employees' use of cloud services (such as personal Dropbox accounts) in connection with their employment by Presidio.  The Cloud Acceptable Use Policy provides that "[i]t is imperative that Personnel NOT open Cloud services accounts or enter into Cloud service contracts . . . This is necessary to protect the integrity and confidentiality of information and the security of Presidio's network."  This policy prohibits employees from using personal Cloud services to store or send Presidio-related information without Presidio's knowledge.  Like the Employee Handbook, all Presidio employees are required to acknowledge and subscribe to this policy through Presidio's learning management system.

24.      Presidio employees receive ongoing training related to the above-described policies through the Learning and Development Platform, Presidio Elevate.  The trainings include training on the Employee Handbook and an "Annual Cyber Security Awareness Training."  All employees (including, at relevant times, Bello, Brown, and Chris) are required to abide by these policies, and the Presidio IT Department undertakes efforts to monitor that they are doing so.

25.      Finally, when an employee departs Presidio, he or she is contacted by a Presidio HR Business Partner that advises the employee of the confidential nature of Presidio's information and provided with the Employee Exit Guide, which requires the return of all documents, records, equipment, and any other information a departing employee may have containing or relating to Presidio business.  Presidio's HR Business Partner coordinates the return of the employee's Presidio-issued laptop by either collecting the device in person when

possible, or by providing the employee a box and return shipping label to send their laptop back via FedEx or UPS.  The HR Business Partner will also initiate the system termination process when entering the employee's termination date and time in Presidio's HR system.  As part of this process, Presidio disables the employee's active directory account, all Presidio-issued devices, and badge access.

**B.  Bello's, Brown's, and Chris' Employment with Presidio**

26.    Bello was employed by Presidio and its predecessor from June 2009 through May 19, 2023.  His most recent role at Presidio was as an account manager, directly interfacing with customers and partners.

27.    Chris was employed by Presidio and its predecessor from May 2010 through May 25, 2023.  His most recent role at Presidio was as an account manager, directly interfacing with customers and partners.

28.    Brown was employed by Presidio from September 2011 through May 31, 2023. His most recent role at Presidio was as a sales director, a role that entailed supervising business development managers and sometimes interfacing with customers and partners.

29.    At Presidio, both Bello and Brown worked in the carrier colocation business unit, where they worked with data center providers and telecommunications carriers to service customers.

30.    On June 1, 2009, Bello entered into an "Employee, Non-Solicitation and Developments Agreement" with Presidio's predecessor, BlueWater Communications Group LLC (the "Bello Agreement").  A copy of the Bello Agreement is attached as **Exhibit A.**

31.    On May 10, 2010, Chris entered into an "Employee, Non-Solicitation and Developments Agreement" with Presidio's predecessor, BlueWater Communications Group LLC (the "Chris Agreement").  A copy of the Chris Agreement is attached as **Exhibit B**.

32.     The terms of the Bello Agreement and the Chris Agreement (collectively, the "Agreements") are identical.

33.     Section 1 of the Agreements restrict Bello and Chris from engaging in various activities "during [their] employment" with Presidio "and for a period of one (1) year after [their] employment with [Presidio] terminates for any reason" (the "Restricted Period").

34.     Under Section 1.a of the Agreements, each of Bello and Chris agreed that, during the Restricted Period, they

> will not, directly or indirectly, for myself or as a principal, partner, joint venturer, consultant, officer, director, employee, agent, independent contractor or stockholder of any company of business, solicit business from or perform any services for any customer or prospective customer of [Presidio] in the nature of services performed or provided by [Presidio] and will not induce or attempt to induce any such customer or prospective customer to refrain from doing business with [Presidio].

35.     In addition, under Section 1.c of the Agreements, each of Bello and Chris agreed that, during the Restricted Period, they

> will not, directly or indirectly, for myself or as a principal, partner, joint venturer, consultant, officer, director, employee, agent, independent contractor or stockholder of any company or business, induce or influence, or seek to induce or influence, any account, client, customer, employee, agent, independent contractor, insurance company, vendor or any other person or entity which has a business relationship with [Presidio], to withdraw, terminate or curtail its relationship with [Presidio]. . . .

36.     In turn, under Section 1.d of the Agreements, each of Bello and Chris agreed that, during the Restricted Period, they

> will not, directly or indirectly, for myself or as a principal, partner, joint venturer, consultant, officer, director, employee, agent, independent contractor or stockholder of any company or business, solicit business from or perform any services for any vendor, supplier or partner of [Presidio] in the nature of services performed or provided by [Presidio] and will not induce or attempt to induce

any such vendor, supplier or partner to refrain from doing business with the Company.

37.     Pursuant to Section 2 of the Agreements, both Bello and Chris acknowledged that the terms of the Agreements "are material to [Presidio]" and that "damages in the event of [their] breach[es] of th[e] Agreement[s] would not be possible to ascertain."  Accordingly, Bello and Chris agreed that, "in addition to and without limiting any other remedy or right [Presidio] may have, it shall have a right to an injunction or other equitable relief enjoining any such breach or prospective breach," and that "[t]he existence of this right shall not preclude any other rights and remedies at law or in equity."  Bello and Chris also agreed in Section 2 of the Agreements that Presidio "shall not be required to post any bond in connection" with such injunctive or equitable relief.

38.     In Section 4 of the Agreements, Bello and Chris agreed "to reimburse [Presidio] for all costs, expenses and/or damages that it incurs as a result of any violation by [them] of any provision of" the Agreements.  Bello and Chris each further agreed that:

> This obligation shall include court costs, litigation expenses, and actual, reasonable attorneys' fees if [Presidio] establishes by a preponderance of the evidence that the violation (a) was committed by me and that I knew it to be a violation; or (b) was repeated or continued by me, or by others with whom I associated in connection with the violation, after [Presidio] had formally or informally asked me and/or them to cease and desist, or to cause the violation to be discontinued.

39.     Section 9 of the Agreements provides that BlueWater Communications Group LLC "shall have the right to assign th[e] Agreement[s] to its successors and assigns, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by said successors or assigns."

40.     Following execution of the Agreements, Presidio acquired BlueWater Communications Group LLC by merger.  As part of that acquisition, the Agreements were

assigned by operation of law to the successor company, Presidio, which employed Bello and Chris until they resigned in May 2023.

41.     As Presidio employees, Bello, Brown, and Chris were required to acknowledge and agree to abide by the obligations set forth in Presidio's policies, including (but not limited to), the Employee Handbook, the Confidentiality Policy, and the Cloud Acceptable Use Policy. Bello, Brown, and Chris completed this acknowledgement and agreement on an annual basis during their respective employment with Presidio.

### C. Bello's Resignation

42.     On May 15, 2023, Bello attached Driven employment forms to an email and sent it from his Presidio.com email address to his personal email address.  Upon information and belief, therefore, Bello knew not later than May 15, 2023, that he planned to resign from Presidio and join Driven.

43.     On May 16, 2023, Bello notified his supervisor, Ann Dean, of his plan to resign from Presidio.

44.     Thereafter, on May 17, 2023, Presidio's human resources representative, Anna Gross ("Gross"), sent Bello an exit email with important information regarding his departure.  In that email, Gross instructed Bello, among other things:  "Please do not delete any company data and do **not** wipe your Presidio laptop" (emphasis in original).

45.     At his exit interview on May 19, 2023, Bello declined to inform Presidio's human resources representative who his next employer would be, but confirmed that he was going to work for a competitor.

46.     After Bello returned his Presidio-issued laptop to Presidio, Presidio provided it to KLDiscovery ("KLD"), its forensics expert, for analysis.  KLD confirmed that, in the days leading up to his departure from Presidio, Bello deleted several files on his Presidio-issued

laptop.  Among these files were those relating to active Presidio matters that Presidio needed in order to continue servicing their customers.  Not only had Bello not been instructed to delete these files from his Presidio-issued laptop, but Gross had affirmatively instructed him not to do so.

47.    Also among the files that Bello deleted during his final days at Presidio were the Driven employment intake forms, which he had emailed from his Presidio.com email address to his personal email address on May 15, 2023.

**D.  Chris' Resignation**

48.    Upon information and belief, Chris began considering employment with Driven as early as March 31, 2023, when he sent an email from his Presidio.com email address to his personal email address with the subject "Driven Technology," and no text in the body of the email.

49.    Upon information and belief, Chris thereafter made preparations to continue soliciting and servicing Presidio customers and prospective customers at Driven.  On April 12, 2023, Chris sent a document relating to a Presidio customer with which he did business from his Presidio.com email address to his personal email address.  Upon information and belief, Chris still retains this document.

50.    On May 17, 2023, Chris notified his supervisor, Ann Dean, of his plan to resign from Presidio.

51.    The next day, May 18, 2023, Gross sent Chris an exit email, which, similar to the exit email to Bello, instructed Chris:  "Please do not delete any company data and do **_not_** wipe your Presidio laptop.  The laptop needs to be returned to our IT Fulfillment team . . . ." (emphasis in original).

52.     At his exit interview on May 25, 2023, Chris declined to inform Presidio's human resources representative who his next employer would be, but confirmed that he was going to work for a competitor.

53.     Chris was in possession of two Presidio-issued laptops, but delayed in returning them to Presidio for several weeks.

54.     When Chris finally returned the laptops to Presidio, KLD discovered that the recovery password Presidio's IT department had on file for one of the laptops—a Lenovo ThinkPad device—did not work, and neither KLD nor Presidio IT could therefore access the laptop.  Upon information and belief, Chris had changed the encryption on this device in order to hide evidence of misconduct, including misappropriation of Presidio's trade secrets.  Chris has refused to provide a working encryption key.

**E.  Brown's Resignation**

55.     Brown's last day with Presidio was on May 31, 2023, but—upon information and belief—he had been recruited by Driven long before that.

56.     On February 14, 2023, a sales representative at a significant Presidio partner sent a Skype message to Brown at his Presidio.com email address.  The message only said "driven."

57.     Brown's Presidio.com emails further confirm that, on March 15 and April 19 and 25, 2023, Brown held Zoom meetings with Rudy Casasola and Vinu Thomas, the President and Chief Operating Officer, respectively, of Driven.  Upon information and belief, Casasola and Thomas attempted to recruit Brown to join Driven during these Zoom meetings.

58.     At his exit interview on May 31, 2023, Brown told Presidio's human resources representative that he was leaving Presidio "to spend time with [his] family."  He did not indicate that he was going to work for another company, let alone for a competitor.

-12-

59.     KLD analyzed Brown's laptop upon his resignation and confirmed that, between May 18 and 31, 2023, Brown manually accessed several Presidio confidential, proprietary documents, including those containing customer requirements, sales, revenue, margin, and other account information.

60.     There was no legitimate business reason for Brown to have accessed these files during his last days at Presidio.  For example, upon information and belief, it was not necessary for Brown to have accessed these files in order to complete transition activities and the files in question did not relate to ongoing business.  Rather, upon information and belief, Brown accessed these files so that he could use them to compete unfairly against Presidio once he became a Driven employee.

61.     In addition, KLD's analysis confirmed that, on March 14 and 15, 2023, Brown used a web browser to log on to a personal Gmail account, and accessed emails bearing subject lines that referenced both Presidio and a significant Presidio partner.

62.     Presidio prohibits employees from using personal email accounts for business purposes, and Brown was never instructed and never received authorization from any of his supervisors to do so.

63.     Upon information and belief, Brown has not returned to Presidio the emails regarding the significant Presidio partner that he accessed in his personal Gmail account. Accordingly, upon information and belief, Brown is still in possession of these emails.

64.     Brown's use of his personal Gmail account to access emails regarding a significant Presidio partner confirms that he plans to use or has used Presidio confidential, proprietary information to benefit Driven.

**F.  Bello, Brown, and Chris Join Driven and Violate Their Legal Obligations to
    Presidio**

65.    Upon information and belief, Bello, Brown, and Chris are all currently (or soon

will be) employed by Driven, a direct competitor of Presidio, where they are (or soon will be)

soliciting and performing services for Presidio customers or prospective customers.

66.    Upon information and belief, Brown is attempting to set up a carrier colocation

business unit at Driven, similar to the unit he worked with at Presidio.  On July 5, 2023, a

representative of a hybrid technology distributor sent what appears to be a misdirected email to

Brown's Presidio.com email address, setting forth "Verizon and Zoom Insurance Requirements."

Upon information and belief, Brown invited the distributor to send these insurance requirements

to allow him to set up a carrier colocation business in competition with Presidio.

67.    Presidio has also come into possession of emails confirming Bello's solicitation

of Presidio customers and partners on behalf of Driven.

68.    For example, on July 11, 2023, Bello sent an email from his Driven email address

to Brown, discussing "[t]op [customer p]rospects."  Presidio is aware of this email because Bello

misdirected it to Brown's old Presidio.com email address.  Among those prospects are at least

two Presidio current customers, at least one of which Brown worked on.  Upon information and

belief, Bello knew that Brown had worked on one of those customer accounts while at Presidio.

69.    Presidio has also come into possession of an email that, upon information and

belief, Bello sent from his Driven email address to a Presidio customer on July 13, 2023.  Bello

had serviced that customer when he was a Presidio account manager.  In his July 13th email to

the customer, Bello wrote that he "cover[s the customer] . . . for Driven Technologies and we are

currently doing business with one of their departments."  He wrote further that he "wanted to

setup a call to introduce myself to you and talk about what we have been working on historically

for this account and where we can potentially partner with Palo [Alto Networks, another Presidio partner]."

70.    Upon information and belief, Driven hired and continues to employ Bello and Chris despite knowing that Bello and Chris are still bound by the restrictions in the Agreements.

71.    In addition, upon information and belief, as Driven employees, Bello, Brown, and Chris are or will be soliciting and inducing Presidio's partners to reduce their business with Presidio and switch that business over to Driven.

72.    Upon information and belief, Driven knew of and induced Bello's, Brown's, and Chris' misappropriation of Presidio's trade secrets and confidential, proprietary information.

**G. Defendants Rebuff Presidio's Efforts to Resolve this Dispute Without Litigation**

73.    In light of Defendants' misconduct, Presidio sent cease-and-desist letters to each of the four Defendants (attached as **Exhibits C, D, E,** and **F**) on June 26, 2023.

74.    Bello never responded to Presidio's letter.

75.    As for Brown, later in the day on June 26, 2023, he emailed Presidio's litigation counsel, pleading ignorance of any continued retention or misuse of Presidio's confidential information.  A copy of Brown's response is attached as **Exhibit G**.

76.    As for Chris, upon information and belief, he retained counsel, Campanelli & Associates, P.C. ("Campanelli").  On June 27, 2023, Campanelli sent Presidio's counsel a letter on Chris' behalf (attached as **Exhibit H**), rejecting Presidio's allegations and claiming that Chris "does not possess any of his former employer's documents."

77.    With respect to Driven, Presidio's counsel had sent the cease-and-desist letter to Driven's prior counsel at DLA Piper LLP (US) ("DLA Piper"), which had represented Driven in connection with a prior matter involving a different Presidio employee.  In that letter, Presidio's counsel asked DLA Piper to confirm not later than June 27, 2023, whether it represents Driven in

connection with the instant matter.  DLA Piper did not respond until June 29, 2023, when the attorney emailed Presidio's counsel:  "I am writing to confirm receipt of your letter. . . . I will provide a formal response, including confirmation regarding representation, as soon as possible." On June 30, 2023, DLA Piper confirmed via email that it "do[es] not represent Driven at this time in connection with the matters set forth in [Presidio's] June 26th letter.  A copy of the email exchange with DLA Piper is attached as **Exhibit I**.

78.      In light of this, Presidio thereafter forwarded its letter to Driven directly to Driven's President, Rudy Casasola, on June 30, 2023.  A copy of that correspondence is attached as **Exhibit J**.

**COUNT I**
**(Defend Trade Secrets Act, 18 U.S.C. § 1836)**
**(Against All Defendants)**

79.      Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

80.      Pursuant to the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

81.      In connection with the development and conduct of its business, Presidio has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information.

82.      Presidio has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its

-16-

business.  These measures include the use of employee confidentiality agreements (like the

Agreements) and its policy requiring employees to periodically acknowledge and subscribe to

the Presidio Confidentiality Policy and the Employee Handbook.

83.    By virtue of their positions, Bello, Brown, and Chris were provided access to

trade secret information in the performance of their respective roles at Presidio including, but not

limited to, information regarding proprietary business methods, strategies, technologies,

products, marketing plans and procedures, and other proprietary information regarding its client

preferences, contract information, pricing methods, margins and information, bids, sales, sales

volumes and strategies, purchasing histories, and other confidential and proprietary information,

and other trade secret information.

84.    Prior to leaving their employment with Presidio, Bello, Brown, and Chris

acquired Presidio's trade secret information through improper means, including through

deception and violation of the Confidentiality Policy and (with respect to Bello and Chris) breach

of the Agreements.  For example, upon information and belief, prior to their departure from

Presidio, Bello, Brown, and Chris downloaded, emailed themselves, or otherwise retained

Presidio confidential, proprietary information, including customer information.

85.    Upon information and belief, moreover, prior to his departure from Presidio,

Bello deleted from his Presidio-issued laptop copies of the Presidio trade secrets he had retained

or used, all in an effort to hide evidence of his wrongdoing.

86.    Likewise, upon information and belief, prior to his departure from Presidio, Chris

modified the encryption on his Presidio-issued laptop, such that no one at Presidio can access it,

in an effort to hide evidence of his wrongdoing.

87.     Upon information and belief, Driven induced and has encouraged Bello, Brown, and Chris to engage in these acts of misappropriation so that they and Driven can use Presidio's trade secrets for Driven's benefit.

88.     Bello, Brown, Chris, and other employees now employed by Driven have used, or inevitably will use, this trade secret information in performing their respective duties for Driven and competing unfairly with Presidio in interstate commerce.

89.     Defendants knew or had reason to know that this trade secret information was acquired through improper means.

90.     Presidio has at all times had a protectable business in its trade secret information, and has taken reasonable steps to protect the secrecy of this information.

91.     Defendants have misappropriated Presidio trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

92.     The misappropriation of trade secrets has and will proximately cause substantial damage to Presidio including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Driven or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

93.     Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Presidio's proprietary and trade secret information, Presidio will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

94.     Accordingly, Presidio is entitled to preliminary and permanent injunctive relief (i) prohibiting the use, possession, transfer, duplication and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that

would or could make use of such proprietary and trade secret information, and (ii) directing the return by Defendants of Presidio's trade secret information.

95.     In addition, Presidio has also suffered and seeks an award of actual and exemplary damages (in an amount to be determined at trial) as a result of Defendants' misappropriation of Presidio's trade secret information.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**
**(New York Law)**
**(Against All Defendants)**

96.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 95 as if fully set forth herein.

97.     In the course of doing business, Presidio has acquired and developed highly valuable, trade secrets and confidential and proprietary information.

98.     In connection with the development and conduct of its business, Presidio has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information.

99.     Presidio has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.  These measures include the use of employee confidentiality agreements (like the Agreements) and its policy requiring employees to periodically acknowledge and subscribe to the Presidio Confidentiality Policy and Employee Handbook.

100.    By virtue of their positions, Bello, Brown, and Chris were provided access to trade secret information in the performance of their respective roles at Presidio including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, sales volumes and strategies, purchasing histories, and other confidential and proprietary information, and other trade secret information.

101.    Prior to leaving their employment with Presidio, Bello, Brown, and Chris acquired Presidio's trade secret information through improper means, including through deception and violation of the Confidentiality Policy and (with respect to Bello and Chris) breach of the Agreements.  For example, upon information and belief, prior to their departure from Presidio, Bello, Brown, and Chris downloaded, emailed themselves, or otherwise retained Presidio confidential, proprietary information, including customer information.

102.    Upon information and belief, moreover, prior to his departure from Presidio, Bello deleted from his Presidio-issued laptop copies of the Presidio trade secrets he had retained or used, all in an effort to hide evidence of his wrongdoing.

103.    Likewise, upon information and belief, prior to his departure from Presidio, Chris modified the encryption on his Presidio-issued laptop, such that no one at Presidio can access it, in an effort to hide evidence of his wrongdoing.

104.    Upon information and belief, Driven induced and has encouraged Bello, Brown, and Chris to engage in these acts of misappropriation so that they and Driven can use Presidio's trade secrets for Driven's benefit.

105.    Bello, Brown, Chris, and other employees now employed by Driven have used, or inevitably will use, this trade secret information in performing their respective duties for Driven and competing unfairly with Presidio.

106.    Defendants knew or had reason to know that this trade secret information was acquired through improper means.

107.    Presidio has at all times had a protectable business in its trade secret information, and has taken reasonable steps to protect the secrecy of this information.

108.    Defendants have misappropriated Presidio trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

109.    The misappropriation of trade secrets has and will proximately cause substantial damage to Presidio including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Driven or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

110.    Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Presidio's proprietary and trade secret information, Presidio will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

111.    Accordingly, Presidio is entitled to preliminary and permanent injunctive relief (i) prohibiting the use, possession, transfer, duplication and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information, and (ii) directing the return by Defendants of Presidio's trade secret information.

112.    In addition, Presidio has also suffered and seeks an award of actual and exemplary damages (in an amount to be determined at trial) as a result of Defendants' misappropriation of Presidio's trade secret information.

## COUNT III
## UNFAIR COMPETITION
### (New York Law)
### (Against All Defendants)

113.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 112 as if fully set forth herein.

114.    During their employment with Presidio, Bello, Brown, and Chris had access to Presidio's trade secrets and confidential and proprietary information.

115.    Upon information and belief, Bello, Brown, and Chris directly misappropriated Presidio's trade secrets and confidential and proprietary information by downloading, emailing themselves, or otherwise retaining such information and using it to benefit Driven.  In addition, to cover up their evidence of wrongdoing, Bello and Chris tampered with their Presidio-issued laptops by deleting files or rendering them inoperable prior to their respective departures.

116.    Upon information and belief, all Defendants (including Driven) then used or will use the trade secrets and confidential and proprietary information stolen by Bello, Brown, and Chris to gain a competitive advantage over Presidio in competing for common customers, prospective customers, and partners.

117.    Upon information and belief, all Defendants are continuing to utilize the trade secrets and confidential and proprietary information of Presidio to unfairly compete against Presidio in the wake of Bello's, Brown's, and Chris' departures from Presidio to Driven.

118.    Defendants' unfair competition has and will directly and proximately cause substantial damage to Presidio and its business, including the loss of market share and prospective customers, loss of its trade secrets and confidential and proprietary information, and damage to its reputation.

119.    Defendants' acts of unfair competition have and will directly and proximately cause Presidio to suffer great damage and injury, and Presidio will continue to suffer damage by the continued acts of Defendants.

**COUNT IV**
**BREACH OF CONTRACT**
**(New York Law)**
**(Against Bello and Chris)**

120.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 119 as if fully set forth herein.

121.    The Bello Agreement constitutes a binding and valid agreement between Presidio and Bello.

122.    The Chris Agreement constitutes a binding and valid agreement between Presidio and Chris.

123.    Under the Agreements, both Bello and Chris are prohibited from soliciting or performing any services for Presidio customers or prospective customers on behalf of a competing venture up until one year following their respective departures from Presidio (previously defined as the "Restricted Period").

124.    Similarly, during the Restricted Period, each of Bello and Chris is prohibited from inducing any customer or partner of Presidio to reduce its relationship with Presidio and divert that business to a competitor.

125.    The Restricted Period for both Bello and Chris runs to May 2024.

126.    Presidio has performed its obligations under the Agreements.

127.    Upon information and belief, Bello and Chris have joined Driven as account managers, where they are soliciting or performing services for Presidio customers and prospective customers, or soon will.  In addition, upon information and belief, at Driven, Bello and Chris are inducing Presidio customers and partners to reduce their business with Presidio and divert it to Driven.  Accordingly, Bello and Chris have breached and plan to continue breaching the Agreements.

128.    Bello and Chris agreed in the Agreements that Presidio is entitled to injunctive relief to prevent and remedy such breaches, without need to post a bond.

129.    Bello and Chris also agreed that if they continued breaching the Agreements after receiving cease-and-desist letters from Presidio, or otherwise being advised of their breaches, they will be obligated to pay Presidio's costs, expenses and/or damages that it incurs as a result of their violations of the Agreements, including court costs, litigation expenses, and actual, reasonable attorneys' fees.

130.    Presidio has been damaged by Chris' and Bello's breaches of their Agreements, in an amount to be determined at trial.

131.    Accordingly, for Chris' and Bello's breaches of their Agreements, Presidio seeks (i) an award of damages in an amount to be determined at trial, (ii) preliminary and permanent injunctive relief, and (ii) and award of attorneys' fees and costs.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(New York Law)**
**(Against Driven)**

132.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 131 as if fully set forth herein.

133.    The Agreements are valid and binding contracts between Presidio, on the one hand, and Bello and Chris, on the other.

134.    Upon information and belief, prior to May 2023, Driven knew that Bello and Chris were parties to the Agreements, and were aware of the restrictions therein.

135.    Notwithstanding this knowledge, Driven proceeded to hire Bello and Chris, and continues to employ them.

136.    Upon information and belief, Driven induced Bello and Chris to join Driven and breach their Agreements, as set forth above.

137.    As a result of Driven's procurement of Bello's and Chris' respective breaches, Presidio has suffered damages, the exact amount to be specifically determined at trial, plus prejudgment interest.

138.    Further, as set forth herein, as a result of Driven's tortious interference with the Agreements, Presidio risks losing customers and partners to Driven.

139.    Presidio has no adequate remedy at law for such irreparable harm.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Presidio demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor, and against Defendants, on the Complaint, as follows:

(1)    For a temporary, preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all other persons acting in concert with them from:

(i) as to Bello and Chris, performing services for or soliciting business from any customer or prospective customer of Presidio in the nature of services performed by Presidio;

(ii) as to Bello and Chris, inducing any customer, prospective customer, or partner of Presidio to refrain from doing business with, or withdraw, terminate or curtail its relationship with Presidio;

(iv) as to all Defendants, continuing to possess or use Presidio's confidential and trade secret information; and

(v) as to all Defendants, such other relief as the Court may deem appropriate as against Defendants;

(2)    For an award of Presidio's actual damages and lost profits it has sustained as a result of Defendants' unlawful acts of misappropriation of Presidio's trade secrets and confidential information, and to recover from Defendants' the gains, profits, and advantages Defendants have obtained as a result of the wrongful conduct alleged herein, in an amount to be determined at trial;

(3)    For an order awarding Presidio its attorneys' fees under the Defend Trade Secrets Act pursuant to attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D);

(4)    For an order awarding Presidio exemplary damages in an amount twice the amount of actual damages awarded, for willful and malicious misappropriation under the Defend Trade Secrets Act pursuant to 18 U.S.C. § 1836(b)(3)(D);

(5)    For an order awarding Presidio all costs, litigation expenses, and actual, reasonable attorneys' fees pursuant to the Agreements between Presidio, on the one hand, and Bello and Chris, on the other hand;

(6)    For an award of compensatory damages against Defendants in favor of Presidio;

(7)    For an award of punitive damages against Defendants and in favor of Presidio;

(8)    For an order that Presidio recover its costs and attorneys' fees from Defendants;

(9)    For prejudgment and postjudgment interest according to law; and

(10)    For such other and further relief as the Court deems just and proper.

Dated:  New York, New York          Respectfully submitted,
       July 19, 2023


                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

         By:     */s/ Robert S. Friedman*        
                    Robert S. Friedman
                    Joshua I. Schlenger
                    Meghan S. Stuer

                    30 Rockefeller Plaza
                    New York, NY 10112
                    Tel.: (212) 653-8700
                    rfriedman@sheppardmullin.com
                    jschlenger@sheppardmullin.com
                    mstuer@sheppardmullin.com

                    *Attorneys for Plaintiffs*